O’NIELL, O. J.
 

 This is a suit for the value of 3.7 acres of land and the buildings thereon, taken and destroyed by the board of commissioners of the Pontchartrain levee district for levee purposes. The land taken was the front portion of a tract containing 30 acres, assessed at $15,000 for the taxes of the preceding year. The sixth section of article 16 of the Constitution, 1921, provides that lands and the improvements thereon used or destroyed for levee purposes shall be paid for at a price not exceeding the assessed value for the preceding year. Inasmuch as only a part of the land was taken, with the improvements that were destroyed, the question in this case is: What proportion of the assessed value of the property shall be paid? The plaintiff claims the proportion of tbie assessed value which the actual value of the 3.7 acres taken, with the improvements that were destroyed, bore to the actual value of the whole tract. The levee board contends that the buildings were not included in the assessment of the property, and that the 3.7 acres of land that were taken were of the same value per acre as the remaining 26.3 acres. Accordingly, the levee ¡board tendered $1,850, as the assessed value of 3.7 acres at $500 per acre. The district court gave judgment for the amount tendered. The plaintiff has appealed from the decision.
 

 In the case'of Green v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619, where only the front — being the most valuable — portion of plaintiff’s land was taken for levee purposes, it was held that he should be paid that proportion of the assessed value of the whole tract which the value of the portion taken bore to the value of the whole tract. Accordingly, the plaintiff in this case should be paid in proportion to the value, and not in proportion to the area, of the land taken.
 

 The argument of the levee board that the buildings were not included in the assessment of the property is based upon the fact that the buildings were not valued separately from the land, as they should have been, on the assessment rolls. Act No. 140 of 1916, in subsection 3 of section 10, as amended by Act No. 211 of 1918, § 1, makes it the duty of the Louisiana tax commission (formerly the board of state affairs) to require the assessors throughout the state, in their assessments of property for taxes, to make a “separate valuation and assessment of improved and unimproved property and the improvements thereon..” But it does not follow, necessarily, from the failure of the officers to observe that requirement of the law in this instance, that thé improvements on the land were not in fact assessed, or that their value was not included in the assessment of the property as a whole. The copy of the assessment roll, which was introduced in evidence, shows that the plaintiff was assessed for 80 acres of agricultural land, $8,000, and for the 30 acres of suburban land, $15,000, and that the total sum of the two valuations, $23,000, was carried out in the column headed “Actual value of all lands, lots or parcels of land, and all improvements thereon, as fixed by the La. Tax Commission for all assessment purposes.” It cannot be disputed, therefore, that the buildings and improvements on either or both tracts of land were included in the assessment, in the sense that they were affected by the tax lien, and were subject to sale for the taxes assessed, as a part of the real estate. The' levee board undertook to prove
 
 *1062
 
 by the testimony óf a deputy assessor,' and by reference to the “assessment sheet,” -which the board offered in evidence, that the value of the buildings on the 3.7 acres of land was not included in the assessment, notwithstanding the declaration recorded on the assessment roll that the amount of the assessment represented the actual value of the land “and all improvements thereon.” The evidence tending to contradict the record or assessment roll, was objected to by counsel for plaintiff; and the objection should have prevailed. An assessment roll is an official and public record which the assessor is not allowed to contradict. Cooley on Taxation (4th Ed.) vol. Ill, p. 2041, § Í010, states the rule, viz:
 

 “Assessors, on appeal, cannot contradict their records; and they are estopped to deny the statement in their certificates of verification of the assessment roll. Parol evidence is not admissible to vary or affect the written record of an assessment; The record of a taxing body cannot be impeached' by oral testimony of members or others as to' the .motives or reasons which govern the actions of the members.”
 

 In People v. San Francisco Savings Union, 31 Cal. 132, the court said: “Independent of a statute authorizing such evidence, parol testimony of the assessor cannot be received to show what the figures in the column of valuation were intended to represent.” See, also, McQueen v. Bush, 76 Miss. 283, 24 So. 197 ; Allen v. McKay & Co., 139 Cal. 94, 72 P. 713 ; Saco Water Co. v. Inhabitants of Buxton, 98 Me. 295, 56 A. 914 ; Sweetsir v. Chandler, 98 Me. 145, 56 A. 584.
 

 It might be inferred from the “assessr ment sheet,” which was introduced in evidence by the levee board over the plaintiff’s objection, that the plaintiff did not furnish the assessor “a sworn list or return” of this property for assessment; but’that" is'a matter of no importance.' The furnishing of such a “sworn list or return”
 
 'is'.
 
 required by' Act No. 97 of 1924, p: 152, to :be made by the taxpayer before the 1st day of April,-as a condition
 
 precedent to
 
 his right
 
 to .'tiring
 
 a suit to contest the- correctness' or legality of his assessment if he is not satisfied- -with ■ it, but the forfeiture of the right to .co.ntest in court the correctness or legality of the assessment is the only penalty which the stat: ute imposes for the neglect of a taxpayer to furnish the “sworn list or return” of his* property. There is no complaint concerning the correctness or legality of the assessment in' this case. ......:
 

 Our conclusion is that the plaintiff is entitled to be paid that proportion of the assessed valuation, $15,000, which the value of the 3.7 acres of land taken, with the buildings which were destroyed, bore to the value of the whole property; and we find from the evidence that the fractional part of the $15,000 which plaintiff is entitled to is, approximately, three-tenths, or, to be exact, $4,480. We arrive at these figures by estimating the value of the buildings which were destroyed at $3,-000; which leaves $12,000 as the 'assessed value of the 30 acres of land; which is $400 per acre. The 3.7 acres of land at $400 per acre, plus the estimated value of the buildings, amounts to $4,480. There is testimony in the record to the effect that the 3.7 acres on the front of the tract were - worth more per acre than the remaining 26.3 acres; but the evidence leaves no doubt that what-is now the front part of the tract, fronting on the new public road adjacent to the newly constructed levee, is worth as much per acre as was the front part of the tract, fronting on the old road which adjoined the levee before it was moved back. The 'testimony shows also that the so-called “replacement value”
 
 *1064
 
 of the buildings that were destroyed was not less than $4,400, and perhaps as -much as $5,500; but the buildings were very old, and the material which might have been salvaged would have been worth only $1,000 or $1,200, according to the testimony. Our estimate of the value of the buildings is probably as accurate as the evidence permits.
 

 The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff shall recover of and from .the defendant, board of commissioners of the Pontchartrain Levee District, the sum of $4,480, with interest thereon at 5 per cent, per annum from judicial demand, January 27, 1926, and the costs of this suit.
 

 BRUNOT, J., dissents.