LOUISIANA HIGHWAY COMMISSION v.
GIACCONE

———

(March 7, 1932. Opinion and Decree.)

———

L. L. Morgan and A. S. Cain, Jr., of New
Orleans; J. K. Gaudet, of Gretna, and D. M.
Ellison, of Baton Rouge, attorneys for
plaintiff, appellee.

Brian & Brian, of New Orleans, attorneys
for defendant, appellant.

JANVIER, J. For the purpose of provid-
ing a right of way for a hard-surfaced state
highway, Louisiana Highway Commission
seeks to expropriate a strip of land 100
feet wide by 192 feet long.

A jury of freeholders fixed the value of
the land taken at $63.80, and from a judg-

ment based on that verdict, defendant has appealed.

Whether there was necessity for the particular land is, of course, not before us, and we are called upon to consider only the correctness or inadequacy of the award.

Defendant complains on three counts, as follows:

First, that the amount allowed for the land actually taken is inadequate.

Second, that no allowance was made for the depreciation in value suffered by a small strip of land 15 feet wide lying immediately alongside the larger strip actually taken, which depreciation is said to result from the fact that such small strip cannot be cultivated, but must be reserved by the landowner for a so-called "headland," on which mules drawing plows or other agricultural implements, or on which mechanical tractors may turn around.

Third, that no allowance was made to reimburse the landowner for the costs of court and attorney's fees in another proceeding, by which it was sought to prevent, by injunction, the Highway Commission from appropriating by force and without lawful means, the land which was later the basis of this expropriation proceeding.

We will describe briefly the character of land which is involved and the conditions, agricultural and otherwise, which surround it.

The entire tract owned by defendant has a frontage of 191 feet 11 inches and extends in depth to the township line; in all between 40 and 50 arpents. At the end towards the Mississippi river, it is crossed by the right of way of Louisiana Southern Railway Company. On the river side of the railroad tracks lies the old highway.

On the other side of the tracks is the strip needed for the new highway. The land is about seven or eight miles below the city of New Orleans and is used for truck farming, as is nearly all the land in that immediate vicinity, except a large tract occupied by an oil refinery. (We notice, but attach to it no importance, that, though the strip taken is said to be 192 feet in length, defendant's property is only 191 feet 11 inches in frontage, so that there is an error of one inch in one measurement or the other.)

The depreciation in value claimed to result to the 15-foot strip immediately alongside the actual highway right of way is said to be caused by the fact that heretofore, in cultivating his land, defendant's mules have used the railroad right of way to turn around, whereas under the new arrangement that railroad right of way is no longer available and a headland on defendant's own land must now be reserved for that purpose and cannot be devoted to cultivation.

Assuming that the facts in this regard are as stated by defendant, the loss which has been caused is not such as must be compensated for. If, by forbearance, the railroad company allowed defendant to use its right of way for such purpose, that was his good fortune, so long as the proximity of his land to the right of way made that practice possible but if, now, by legal means, his land is no longer left immediately adjacent to the railroad right of way, and if, as a result, he is deprived of that privilege, such deprivation is not an item or element of damage for which courts may award compensation. Furthermore, such small damage—defendant himself fixes it at $28—has been many times offset by the appreciation in value which has resulted

to the entire remaining tract by reason of the construction of the highway. It is well settled that, though appreciation in value of what remains may not be taken into consideration as an offset to the value of land actually taken, nevertheless, such appreciation may properly be considered as an offset to a claim for consequential damages claimed to result to other land than that actually expropriated. In Louisiana Society for Prevention of Cruelty to Children v. Board of Levee Commissioners of Orleans Levee District, 143 La. 90, 78 So. 249, 254, the Supreme Court said:

"In Shreveport R. Co. v. Hinds, 50 La. Ann. 782, this court, at page 785, 24 So. 287, 289, had said:

"'The question of the value of the land to be taken is distinct and separate from the question of damages.'

"It is thus seen that at the time article 312 came to be drafted, our jurisprudence had made a' clear distinction between property actually taken and property not actually taken but merely damaged—holding the latter to be compensable by benefits, but the former, not."

To the same effect see New Orleans Pacific Railway Co. v. Gay, Tutor, 31 La. Ann. 430, in which the Supreme Court said:

"The true question for the jury was, to what amount would the Augusta Plantation be enhanced in value by the building of plaintiff's railroad? The amount of that enhancement could be set off against any damages which that plantation suffered by the building of the road."

The claim for special damage to the small 15-foot strip was properly rejected.

Defendant claims $100 as attorney's fees and $10 for court costs incurred in the injunction proceeding. He asserts that, before the expropriation suit was filed, he learned that it was the intention of the officials of the highway department to force their way over his land, without first paying therefor and without first bringing condemnation proceedings, and he contends that, since the injunction proceeding was brought to frustrate and prevent such illegal action, he is entitled, in this condemnation suit, to be reimbursed, as an item of damage, the said costs and fees necessarily expended.

Here, again, we are unable to agree. The injunction proceeding was never terminated either favorably or unfavorably to him. That proceeding was different from the one now before us, and we cannot see that, as an element of value in an expropriation proceeding, such cost should be taken into consideration.

In the proper proceeding, no doubt payment of such fees and costs would be resisted on the ground that, if they were made necessary by the officials or employees of the highway commission, then those acts which made them necessary were in the nature of torts, since those employees and officials are not authorized by law to take property by force. And it is contended that, if those items expended resulted from torts, then there is no redress, since the highway commission may not be sued for torts of its officials or other employees. See Orgeron et ux. v. Louisiana Power & Light Co. et al., 19 La. App. 628, 140 So. 282, decided by us today.

There remains for our consideration only the inadequacy, vel non, of the award for the land actually taken. The amount of land involved was 44/100 of an acre. The amount of the award, as we have stated, was $63.80.

There immediately come to mind two

principles of law applicable to condemnation proceedings: First, that the amount of the award should be based on the fair market value of the property taken; and, second, that appellate courts should, only with great reluctance, set aside or amend awards made by juries of freeholders.

The rule for determining the fair market value is well stated in Ruling Case Law, volume 10, page 128, Eminent Domain, sec. 112, in which it is said:

"When a parcel of land is taken by eminent domain, the measure of compensation to be awarded the owner is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy; in other words the test is the fair market value of the land."

That this is the Louisiana rule we find by reference to Louisville & Nashville R. Co. v. De Montluzin Co., Inc., 166 La. 211, 116 So. 854, 855, in which the court said:

"It is well settled that the criterion of value is the market value of the property at the date of the institution of the expropriation suit, in view of any use to which it may be applied and of all the uses to which it is adapted. * * * The market value means the fair value of the property between one who wants to purchase and one who wants to sell, under usual and ordinary circumstances. Market value does not mean speculative value."

This language is found repeated almost verbatim in Texas Pacific-Missouri Pacific Terminal Railroad v. Elliott, 166 La. 350, 117 So. 275. See, also, Louisiana Ry. & Nav. Co. v. Baton Rouge Brickyard, 136 La. 833, 67 So. 922, L. R. A. 1917A, 402; Orleans & J. R. Co. v. Jefferson & L. P. R. Co., 51 La. Ann. 1616, 26 So. 278; Louisiana Ry. & Nav. Co. v. Xavier Realty, Ltd., 115 La. 328, 39 So. 1.

That the court should be most reluctant to change an award of a jury of freeholders has been many times asserted by our appellate courts, notably in New Orleans & Gulf R. Co. v. Frank, 39 La. Ann. 707, 2 So. 310, in which it was said that:

"In expropriation proceeding we place great reliance upon the verdict of the jury. Being taken from the vicinage and landowners themselves, and presumed to be thoroughly acquainted with the character of the land and its value, a court should not disturb the estimate of value fixed by the verdict, unless it is found inconsistent with or entirely unsupported by the evidence."

This same principle was announced in New Orleans Ry. & Light Co. v. Lavergne et al., 138 La. 949, 70 So. 921, 924, in which the court declared that in repeated decisions it had been held:

"* * * That the amount of compensation allowed by a jury in expropriation proceedings should not be reduced unless it is manifestly excessive (N. O., F. J. & G. I. R. R. v. McNeely, 47 La. Ann. 1298, 17 So. 798; T. & P. Ry. Co. v. Wilson, 108 La. 3, 32 So. 173; Shreveport v. Youree, 114 La. 184, 38 So. 135, 3 Ann. Cas. 300) it follows that the award should be reduced if it is manifestly excessive."

Bearing in mind, then, these two principles, that we should be very loath to amend such an award and that the fair market value is the criterion, let us "read, mark, learn and inwardly digest" all the evidence.

There has been but one sale of neighboring land within a period of time sufficiently recent to assist in solving the problem. In 1929 one John Boe purchased a tract having a frontage of 1½ arpents and a depth of 40 arpents, or containing 60 arpents in all. This land is about two squares from Giaccone's, is very much the same

kind of land, and was purchased for $13,-250. This sale cannot be used to determine the actual value of the unimproved land because, on the Boe land, there were various buildings which have considerable value. However, merely to afford one basis of calculation, we will analyze the figures in connection with that sale, which figures we think justified by the evidence.

From what the various witnesses have said, the value of the Boe property was about equally divided between the land itself and the improvements situated thereon. Therefore the value of the land may be said to be $6,625. From the evidence as to the character of the front lands, as distinguished from the rear, or swamp, lands, it appears that there are about 35 arpents of swamp land in the rear of the Boe tract, which have a value of only a few hundred dollars—as near as we can arrive at, in the neighborhood of $600 or $625, so that the remaining 25 acres would have an average value of $400 per acre. It is true that these figures are not conclusively shown by the evidence to be correct, but, strangely enough, the final result is remarkably close to the assessed value of those front lands, to-wit, $370 per acre. Whether the assessed value may be considered we will later discuss, but for the present we merely mention it in passing to show that the figure, $400 an acre, is not entirely unreasonable.

The opinions of the various witnesses are so divergent that we find it difficult to give to any one statement primary consideration. The witnesses produced by defendant, Giaccone, seem to be convinced that the land taken is worth at least $800 an acre, whereas those witnesses tendered by the highway commission would have us believe that $140 to $150 an acre is a proper valuation.

Mr. Nunez, president of the Lake Borgne basin levee district, states that the entire Giaccone tract is worth about $11,500, and that of that sum about $7,500 should be taken as the value of the improvements. This, he says, leaves $4,000 as the value of the land. There are about 17 arpents of front land, those in the rear having, as we have stated, little value, apparently not more than $500 in all. This would, even according to Nunez, give to the front lands a value of something over $200 an arpent. There can be no doubt that those lands nearest the front are most valuable; consequently the strip taken is the most valuable of all, and such difference in value may—nay, must—be taken into consideration, because, whatever may be the average value per acre of the whole tract, it is plain that those front lands are worth more than the rear.

In Green et al. v. Board of Commissioners, 163 La. 118, 111 So. 619, 620, our Supreme Court said:

"* * * It does not follow that each acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract.

"On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values."

An effort was made by defendant to show that a certain Mrs. Lund had offered to purchase a portion of the strip of land here involved, and his counsel argues that the price offered by Mrs. Lund should be used to fix the market value of the whole strip.

Evidence of this kind is of very doubtful value. Actual sales are, of course, of great assistance, and are, in fact, determinative, but, where no sale has resulted, evidence of an offer to purchase should be given scant consideration because, although in any particular case such evidence might be bona fide, the practice of admitting it would render it too easy to obtain fraudulent testimony of fictitious offers, against which the other party would have no defense whatever. In fact it has been held that such evidence should not be accepted at all. American & English Encyclopedia of Law, vol. 10, p. 1154. In Louisiana Ry. & Nav. Co. v. Morere, 116 La. 997, 41 So. 236, 238, the Supreme Court of Louisiana said:

"The evidence as to offers of purchase was properly rejected. Offers of purchase are a class of evidence safer to reject than to receive."

The offer of defendant to prove that the lands in question had been for some years assessed at $370 per acre and the ruling of His Honor below that such evidence was not admissible raises an interesting question. The evidence was ordered excluded (though it is actually in the record in several places) on the supposed authority of several decisions, notably Louisiana Ry. & Nav. Co. v. Morere, supra, in which the court, at page 1000 of 116 La., 41 So. 236, said:

"Until assessments shall be made in this state at the market value of property, they will not be reliable evidence of value, and the offer of them for showing value will be a useless incumbering of the record, unless accompanied by proof that the appraisement was made by the owner himself."

It will be noted that, in the Morere case and in the other cases which we have ex-amined, it was sought to use the assessment figure as the maximum value, whereas here all that defendant contends is that the assessment is the minimum, below which the state itself, which, through its own officers, has made the assessment, cannot be permitted to go in actually taking land.

While it is true that lands in this state are seldom, if ever, assessed at their true value, we feel that it can be safely said that the assessment value never exceeds the actual value, and it is for this reason that it would be unfair to a landowner to force the acceptance of the assessed value as the basis for condemnation, but where the landowner himself desires to use the assessed value, not as the actual value, but as the minimum below which the condemnation price shall not go, it seems reasonable to permit him to do so where the state itself, which, through one department, made the assessment, is, through another, attempting to take the lands for less than the assessment.

If the state has for years accepted taxes based on the assessment, it hardly lies in the mouths of its own officials to attempt to deprive the owner of his property for less than the amount at which it has been valued for the purpose of fixing those taxes. In the Morere case the Supreme Court recognized that an assessment might be used against an owner, if there were proof that it "was made by the owner himself"; in other words, that an assessment made by one party may be used as evidence against him who made it. Why, then, since it is presumed that the state itself, in assessing the property, did not assess it at full value, may not the assessment be accepted against the state as representing at least minimum value? In

452

Board of Levee Commissioners v. Jackson's Estate, 113 La. 124, 36 So. 912, 915, the Supreme Court held that· a landowner, who for years had paid taxes based on an unconscionably low assessment, could not later, in an expropriation proceeding, contend that the assessment should not be the basis of condemnation. The court said:

"If the valuation stated was the proper standard by which the owners should pay money to the state, it certainly should not be ignored when they call upon the state to pay money for it."

The rule of law should, to some extent, work both ways, and while we do not feel that an assessment should be accepted as final in a condemnation suit between a state agency and a citizen, still we cannot agree that it is not admissible as evidence, because, to some extent, it is of assistance in determining what is actual market value.

After a careful reading of the record, we are of the opinion that the award was so inadequate as to require our interference therewith.

Just what is the correct market value of the land can no more be answered by us than it was answered by the various witnesses. We have reached the conclusion that $400 per acre for the front land is as near the correct value as any one can determine, and shall adopt that figure as the basis of calculation. The award should have been $176, and we shall amend the judgment accordingly.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by the increase of the amount thereof to $176, and that, as thus amended, the said judgment be, and it is affirmed.