148 So.2d 337 (1962)
TEXAS GAS TRANSMISSION CORPORATION
v.
C. M. THIBODEAUX COMPANY, Ltd.
No. 5685.
Court of Appeal of Louisiana, First Circuit.
December 14, 1962.
Rehearing Denied January 18, 1963.
*338 Shotwell & Brown, by Burt W. Sperry, Monroe, Martin & Himel, by Lloyd R. Himel, Lutcher, for appellant.
Triche & Sternfels, by Emile R. Sternfels, Jr., Napoleonville, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
The appeal in this expropriation proceeding is by plaintiff, Texas Gas Transmission Corporation, who herein complains of the monetary damages awarded defendant property owner in compensation for a right of way required by plaintiff-appellant over three certain tracts of swamp lands owned by defendant-appellee and situated in Assumption Parish.
In the Court below judgment was rendered in favor of defendant in the sum of $2,997.00, representing the market value of 2.997 acres lying within plaintiff's required servitude, and in addition thereto the sums of $3,780.00, $120.00 and $5,080.00 as severance damages to Tracts Numbers One, Two and Three, respectively.
For the construction of the proposed pipe line, plaintiff herein requires a construction right of way extending fifty feet in width and a permanent right of way (servitude only) thirty feet wide. Said proposed pipe line crosses certain properties owned by defendant and situated on the East bank of Bayou Boeuf approximately 9 miles from the City of Morgan City. Defendant's said properties have a front of several thousand feet on the aforesaid Bayou Boeuf by a depth of several thousand feet, its location being on an alternate route of the Intracoastal Canal.
It is undisputed that the frontage along the East bank of Bayou Boeuf is "high ground" from which the land runs back into low ground or "swamp" which swamp area commences approximately 2,000 feet east of the East Bank of Bayou Boeuf on which the lands front. Plaintiff's pipe line right of way intersects the property on a tangent in that it enters the northern boundary thereof some 2500-3000 feet east of Bayou Boeuf and exits therefrom, at a point on the southern boundary thereof approximately *339 6000 feet east of the said bayou. The parties concede that the right of way crosses the swamp only.
It is settled law in this state that in an expropriation proceeding the measure of damages is the market value of the land takenthat is the price which would be agreed upon at a voluntary sale between an informed and willing seller and an informed and willing purchaser under ordinary circumstances.
In addition to market value of lands taken the owner is entitled to compensation for damages to his remaining lands, if any, caused by the taking, such latter damages being denominated severance damages. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So. 2d 260. The measure of severance damages is the difference between the value of the property immediately before and its value immediately after the expropriation. Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Texas Pipe Line Co. v. Barbe, supra. Severance damages are recoverable only when they are reasonably prospective. They are not recoverable when they are merely anticipated or so remotely prospective as to be characterized as speculative in nature. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672.
The parties concede that in determining market value the best and highest use of the expropriated property determines its market value. It is with regard to this principle that the present controversy rages. Defendant maintains the best and highest use of its said properties is industrial whereas plaintiff contends the lands are swamp and best suited for growing timber.
The record shows that subject properties are situated on the East bank of that segment of Bayou Boeuf forming the alternate route of the inland waterway system known as the Intracoastal Canal and more particularly, at a point thereon approximately nine miles north of Morgan City. It likewise appears that extending northerly from Morgan City the banks of the waterways forming both the main and alternate routes of the Intracoastal Canal have become heavily industrialized. That there is some congestion in the immediate vicinity of Morgan City is not disputed. In the main, the industries appear to consist of concerns engaged in off-shore drilling operations, furnishers of materials and supplies used in such undertakings and related marine activities. The nearest industrial development to defendant's property is situated on the west bank of Bayou Boeuf approximately one and one-half miles south of defendant's property and consists of an industrial site measuring 100 feet front along Bayou Boeuf. There is no industrial development on Bayou Boeuf north of defendant's lands.
Roland Laws, Surveyor, testifying on behalf of plaintiff, stated he walked the entire right of way in the month of August accompanied by plaintiff's expert appraiser, Blouin. It was Laws' function to cruise the timber situated within the right of way and he found growing therein sparse stands of cypress and tupelo gum. He detected no drainage canals in the swamp and at the time of his inspection the land was largely under water, to knee depth in some places. Laws noted no high land whatsoever within the right of way and he considered the timber thereon insufficient to justify logging operations.
Plaintiff's appraiser, J. Louis Blouin, a graduate of Louisiana State University holding a B. S. Degree in Agriculture, engaged as a realtor for some 14 years, stated that he walked the right of way with Laws and found substantially the same condition related by his said associate. Blouin stated that in view of the remoteness of the land from the bayou bank, its swampy nature and lack of drainage, he considered its best and highest use to be for purposes of growing timber. He appraised the swamp land at $50.00 per acre for fee title and $25.00 per acre in the event of the taking of a servitude only. Blouin considered that in *340 view of the nature of the land there would be no severance damages to defendant's remaining properties.
Defendant's witness, Ned Russo, stated that he has been engaged in the real estate business part time for a period of approximately two years in conjunction with an insurance agency which he also operates. Admittedly his experience with large tracts of lands has been extremely limited. He is a resident of Morgan City (St. Mary Parish) and has never handled a sale of large acreage in Assumption Parish wherein subject properties are situated. Because the property fronts on an alternate route of the Intracoastal Canal and its entire frontage is sufficiently high to permit industrial development thereon, he considered the best and highest use of the entire tracts to be industrial. Without attempting to place a separate value on the high land along the bayou as distinguished from the swamp lands in the rear, he appraised the entire tract at $2,000.00 per acre. Russo's appraisal was predicated upon certain comparables or sales of what he considered similar properties in the same general vicinity some of which were much nearer the City of Morgan City than subject properties. Russo's assessment of severance damages to the three tracts in question was most fragmentary and vague considering his frank admission that he was inexperienced with regard to the subject of severance damages occasioned by the taking of a right of way for pipe line purposes.
In support of its contention the land is best suited for industrial development, defendant called as an expert appraiser Mr. Leonard Guidry, a graduate of Louisiana State University possessing a B. S. Degree in Commercial Education. Mr. Guidry stated that he has been engaged in the operation of a general insurance agency for the past fourteen years and that for seven years preceding his appearance herein he has been a licensed realtor. Mr. Guidry's experience, though limited, has included the handling of some large tracts of land although he has never negotiated any sales for lands subject to rights of way for pipe line purposes. Likewise, he was admittedly unfamiliar with the effect which the presence of pipe lines might have upon the value of tracts such as those with which we are herein concerned. Mr. Guidry considered the entire properties to be best suited for industrial purposes. Utilizing what he termed a combination of market data and sales approach (based on certain alleged comparable sales of similar properties) and income approach (predicated upon leases of certain other bayou frontages in the general vicinity for industrial purposes), he concluded the value of subject properties to be $1,800.00 per acre. Although he concedes there is a demand for high land frontage along the banks of Bayou Boeuf, he does not know of any immediate prospects for sale of lands as far removed from the bayou as subject properties.
Predicated upon the foregoing testimony, the learned trial judge found the value of the tract as a whole to be $1,000.00 per acre and on that basis awarded defendant damages for the land actually taken and severance damages to the three tracts in the sums hereinbefore stated. Plaintiff maintains that in so doing the esteemed trial judge fell into error and, with this contention, we are in agreement.
In our judgment, the record herein establishes beyond doubt that the defendant's swamp lands lying 2500 feet or more east of the bayou bank do not possess the same value as the high lands abutting the bayou. It is established with certainty that the bayou frontage is sufficiently high to permit its use for industrial purposes and that the water frontage possesses some potential as industrial sites. As hereinabove shown, it further appears, however, that the nearest industrial development to defendant's property is approximately one and one-half miles to the south and that there is no present industrial development along Bayou Boeuf to the north of defendant's lands. Moreover, it is conceded that generally industrial development along the bayous extends only to a depth of 1200-1500 feet from *341 the banks and no lands lying 2500 feet or more from the water's edge has been sold and developed industrially. Likewise, it is conceded that, whereas defendant has received some inquiries as to possible sales or leases of some of its lands, it is conceded that in the some 80 odd years defendants have owned the lands no offer to lease or purchase any of said swamp lands for industrial use has been received.
Although both Green et al. v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619, and Colonial Land Company v. Board of Commissioners of Pontchartrain Levee District, 170 La. 1057, 129 So. 635, concerned payment of assessed valuation for lands appropriated for levee purposes under the police power of the state as distinguished from the market value which must be paid in the instant expropriation proceeding, nevertheless, we believe the principles therein enunciated by the Supreme Court applicable to the case at bar.
In the cited authorities the Supreme Court recognized that in a given tract of land there may be found lands possessing different characteristics and classifications so that each and every acre therein does not necessarily possess the same value. The Supreme Court expressly declared that in such circumstances the value of each acre is not the average value of the entire tract as a whole. The rationale of the rule is that under such circumstances the value of the particular class of lands affected must be determined in the light of their relative worth, as compared to the remainder of the tract, proper allowance being made for the difference in values between the various classes of lands in the tract.
The Green case, supra, involved payment of assessed value for 3.60 acres of land fronting on the Mississippi River. Defendant Levee Board took 1.3 acres of the tract. The trial court awarded the owner damages in the sum of $459.00 which, in substance, represented the pro rata assessment value of the land taken. The landowner contended the taking involved the front of his property which was the more valuable portion thereof and even though the assessment of the whole was on a per acre basis, the difference in the true value of each acre comprising the tract should be considered in determining the compensation due him. In awarding the landowner increased damages the Supreme Court stated:
"* * * In an action (such as this is) by the owner of land against a levee board for the value of land taken or destroyed for levee purposes, the assessed value of the land for the preceding year is conclusive on the plaintiff as to the actual value thereof. Boyce Cotton Seed [Oil Mfg.] Co. v. Board of Commissioners, 160 La. 727, 107 So. 506.
"And since 1.53 is exactly 42½ per cent of 3.60, it follows that, if it involves a mere matter of arithmetic, the value of the 1.53 acres would be $459 which was the amount allowed plaintiffs by the district judge.
"But in our opinion it is not a mere matter of arithmetic. It is quite true that the total value of the whole land must be taken to be its assessed value; but it does not follow that each acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract.
"On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values.
"In the case before us the acre and a half taken for levee purposes was the front yard of plaintiff's residence, and contained several large shade trees, *342 some being bearing pecan trees. It was much the most valuable part of the land; so much so that without that front yard plaintiffs no longer care for the place as a residence, and have given it up as such.
"All this we take into consideration; but at the same time we cannot overlook the fact that one-half the land is still left, that the whole was assessed only $1,080; and that we must keep well within that limit in fixing the value of the land taken.
"We have therefore concluded to add $400 to the arithmetical proportion heretofore mentioned; the figure thus reached being as nearly a fair one as any we can possibly hope to reach from the record now before us, even acting, as it were, as a jury of freeholders herein. C. Schmidt v. City of New Orleans, 160 La. 281, 107 So. 110.
* * * * * *
"The total allowed by the district judge was $809. To this we have added in all $500 (to wit, $400 plus $100). Our judgment will therefore be for $1,309."
Colonial Land Co., Limited v. Board of Com's, supra, involved the taking for levee purposes of 3.7 acres (together with certain buildings thereon) from a tract of 30 acres. The entire tract was assessed at $15,000 and the taking involved the front portion thereof. In computing damages due the property owner, the Supreme Court reaffirmed the rule announced in the Green case, supra, in the following language:
"* * * Inasmuch as only a part of the land was taken, with the improvements that were destroyed, the question in this case is: What proportion of the assessed value of the property shall be paid? The plaintiff claims the proportion of the assessed value which the actual value of the 3.7 acres taken, with the improvements that were destroyed, bore to the actual value of the whole tract. The levee board contends that the buildings were not included in the assessment of the property, and that the 3.7 acres of land that were taken were of the same value per acre as the remaining 26.3 acres. Accordingly, the levee board tendered $1,850, as the assessed value of 3.7 acres at $500 per acre. The district court gave judgment for the amount tendered. The plaintiff has appealed from the decision.
"In the case of Green v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619, where only the frontbeing the most valuableportion of plaintiff's land was taken for levee purposes, it was held that he should be paid that proportion of the assessed value of the whole tract which the value of the portion taken bore to the value of the whole tract. Accordingly, the plaintiff in this case should be paid in proportion to the value, and not in proportion to the area, of the land taken."
The principle established by the Supreme Court in the hereinabove cited authorities was, we believe, correctly applied in an expropriation proceeding by our brothers of the Fourth Circuit (formerly Orleans Appeals) in Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286 (1932). The Giaccone case involved an expropriation for highway purposes out of a tract of land containing between 40 and 50 arpents. As in the instant case, the tract was composed partially of front or high lands and partly of rear or low, swamp lands. The court therein recognized and reaffirmed the principle that where a tract of land is composed of lands of different classifications, the value of the particular area sought to be expropriated should be determined rather than computing the value of the lands taken by determining the average per acre value of the entire tract. In so holding the court therein stated:
"* * * Mr. Nunez, president of the Lake Borgne basin levee district, states that the entire Giaccone tract is *343 worth about $11,500, and that of that sum about $7,500 should be taken as the value of the improvements. This, he says, leaves $4,000 as the value of the land. There are about 17 arpents of front land, those in the rear having, as we have stated, little value, apparently not more than $500 in all. This would, even according to Nunez, give to the front lands a value of something over $200 an arpent. There can be no doubt that those lands nearest the front are most valuable; consequently the strip taken is the most valuable of all, and such difference in value may nay, mustbe taken into consideration, because, whatever, may be the average value per acre of the whole tract, it is plain that those front lands are worth more than the rear."
None of the expert witnesses who testified attempted to fix the monetary value of the property as a whole. Defendant's experts, Russo and Guidry, fixed the average per acre value at $2,000.00 and $1,800.00, respectively, both contending each and every acre therein is of equal value. Nor does the record show that plaintiff's expert, Blouin, fixed the value of the tract as a whole. Blouin merely testified that upon the basis of certain comparables employed, he appraised the land taken at the per acre value hereinabove indicated.
Although the record shows that defendant's water frontage along the Bayou, to a depth of approximately 1500 feet, is suitable for industrial uses and marketable for such purposes in the reasonably near future, the record does not support defendant's contention that each and every acre of its property is of the same value by virtue of each acre thereof being equally suitable, desirable and marketable for industrial purposes. As herein previously shown, the rear land over which plaintiff's pipe line passes is far removed from the bank of Bayou Boeuf. The locus of the right of way is low swamp land with no water frontage whatsoever. Its nature is such that erection thereon of any industrial plant or development will require considerable fill at great expense whereas the high land adjacent to the bayou needs no such fill. Additionally, at its nearest point, plaintiff's right of way is approximately 2500 feet east of the east bank of the bayou and defendant has shown no lease or sale for industrial purpose to a greater depth than 1500 feet. The record convinces us that defendant's swamp lands possess no reasonably prospective market value for industrial use or purposes.
Defendant also attempted to establish the great worth of its swamp lands by producing evidence of a sale of a similar tract (consisting of both high and swamp land) for residential subdivision purposes pursuant to which the purchaser filled in the swampy portion thereof. The example alluded to involved a tract of land adjacent to and ultimately incorporated within the municipal limits of the City of Morgan City. Subject property is nine miles distant from Morgan City. There is no evidence in the record to support the contention that any portion of defendant's swamp may be sold for residential subdivision purposes in the reasonably near future. The record indicates such suggested use to be remote and speculative.
It follows, therefore, that the judgment of the trial court is erroneous and must be set aside. It is equally clear that, since we lack the necessary evidence upon which the issues herein (market value of property taken and alleged severance damages to the remainder of the tracts) must be adjudicated, this cause must be remanded to the trial court for additional proceedings. We further believe that the ends of justice will be served and the interests of all parties protected by a remand of this cause to the court below for trial de novo, on all issues, consistent with the views herein expressed.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court in favor of defendant, C. M. Thibodeaux Company, Limited *344 and against plaintiff, Texas Gas Transmission Corporation, awarding said defendant damages in the sum of $2,997.00 for the taking of the 2.997 acres of land within the right of way of plaintiff's proposed pipe line and severance damages in the sums of $3,780.00, $120.00 and $5,080.00 to Tracts 1, 2, and 3, respectively, resulting from said taking, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that this cause be and the same is hereby remanded to the Honorable Twenty-Third Judicial District Court, Assumption Parish, for trial de novo, on all issues, consistent with the views herein expressed.
Reversed and remanded.
ELLIS, Judge (dissenting).
It is settled law that the amount due for private property expropriated for public purposes is its market value when taken, in view of any use to which it may be applied and of all the uses to which it is adapted. The market value means the fair value between one who wants to purchase and one who wants to sell, under usual and ordinary circumstances; it does not mean speculative value.
I am satisfied from an examination of the record that the property in dispute is best suited to industrial uses and the fair market value has been established for the right-of-way expropriated. I am further in agreement with the trial judge who stated:
"The Court is satisfied that the location, topography and adaptability of the land concerned makes its best and highest use to be for industrial sites; this even though plaintiff clearly showed that leases along Bayou Boeuf executed by defendant did not extent beyond 1200 feet from the Bayou. This Court cannot in good conscience treat the Bayou frontage as industrial and the rear land as timber, nor can it accept an appraisal on the front and a different appraisal for the rear. The land must be considered as a tract and and its market value fixed as such.
"The experts for defendant fixed the market value at $1800.00 to $2000.00 per acre and while the Court attaches weight to their opinions it is constrained to hold that the sale from Morris Realty to Percy Kohlman at $1000.00 per acre, and the sale from Thibodaux to La. Highway Commission at approximately $1000.00 per acre, and the 103 acre tract from $1000.00 an acre and the 200 acre tract for $1000.00 an acre are comparables."
The above sales referred to by the Trial Judge are comparable sales of swamp land on or near Bayou Boeuf and in the vicinity of the instant property. I feel that the sum of $2,997.00 for the 2.997 acres taken is just and fair under the circumstances. See Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955.)
I do not feel that Green v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619 (1927), and Colonial Land Co., Limited v. Board of Commissioners of Pontchartrain District, 170 La. 1057, 129 So. 635 (1930), are applicable to the present situation. These cases involve expropriation for levee purposes wherein the established law is that the assessed value of the land for the preceding year is conclusive on the owner as to the actual value thereof. In these cases it is recognized that although the court is bound by actual assessed valuation, the value of the property expropriated is not arbitrarily fixed at a fraction of the assessed valuation. Nowhere in these cases do we find a consideration of the two elements that have to be considered in the present case, namely, fair market value of the property taken and severance damages to the balance of the property. Clearly, I realize that certain parts or tracts of land such as that fronting on a highway may be more valuable than property to the rear. However, it is my opinion that the established law requires a determination of fair market *345 value and payment thereof, and, next, a determination of severance damages, if any, in an expropriation suit such as we are now presented with. I do not feel that it is sound in theory, nor practical, in a determination of fair market value of a piece of property expropriated to attempt to break the property down into different areas and place a valuation on each area if it is sufficiently established that the entire piece of property as a whole is adaptable and may be applied to use for industrial purposes and the market value greater than if considered in areas according to high or low land, etc. The owner has the legal right of proving the use and adaptability of the land expropriated which will establish the highest market value. If the land to be expropriated fronts on a highway or navigable body of water and has other advantages, then the owner would and could prove a higher market value by considering only the value of such property with proof of severance damages by depriving the rear of frontage.
The Green and Colonial Land Company, Ltd. cases discussed above were decided in 1927 and 1930, respectively, long before the real movement of industry into the State of Louisiana. In view of the restrictions faced by the court in those cases by virtue of the law that land expropriated for levee purposes could not be valued at more than the assessed valuation for the preceding year, the reasoning used by the Court and the conclusions reached are mute evidence of the high sense of justice and equity possessed by the judges who considered those cases. They are, in my opinion, not to be considered in any respect in limiting or prohibiting an owner of property to be expropriated from proving the highest market value in view of any use to which it may be applied and of all the uses to which it is adapted. An owner has a perfect right to prove the entire value of a piece of property adaptable to industrial use and thereby fix the average value per acre of every acre of land regardless of whether it is high in the back and low in front or vice versa.
The majority opinion relies greatly upon Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286 (1932) 4th Cir.Ct. of App. which, like the Green and Colonial Land Company cases, was decided prior to the industrial era in Louisiana. Also, this case involved an expropriation for highway purposes of a tract of land composed partially of front or high lands and partly of rear swamp lands. It was shown that the property sought to be expropriated was the nearest the front and "most valuable." The Court then stated that "whatever, may be the average value per acre of the whole tract, it is plain that those front lands are worth more than the rear." The Court then cited the Green case in which the Court was specifically attempting to stay within the bounds of the law as to the assessed valuation of the property for the preceding year and at the same time arrive at a fair market value for the front property expropriated. Evidently there was no thought or attempt to prove that the property in question was adaptable to industrial uses for no where is such a fact discussed. The reasons and conclusions reached by the court in this case would not have prohibited the owner from proving that the entire acreage was best suited and adaptable to industrial uses and, therefore, the market value of the land to be expropriated was worth more than the award based upon one comparable sale of neighboring land, more than likely for farming purposes.
I do not consider that the three cases heretofore discussed lay down any iron bound rule as to how an owner must prove the fair market value of his property, other than the criterion of value is the market value of the property at the date of the institution of the expropriation suit in view of any use to which it may be applied and of all the uses to which it was adapted, and the fair market value means the fair value of the property between one who wants to purchase and one who wants to sell under usual and ordinary circumstances.
*346 Once the market value for the property expropriated has been determined, it is my opinion that it is then appropriate to consider the location of the right-of-way (whether frontage or to the rear of the property) as an element of severance damages. As heretofore stated, it is likely that a right-of-way across the front portion of a piece of property will result in much greater severance damages than a right-of-way across the rear of the property. The severance or consequential damages allowed under Section 2 of Article 1 of the Constitution of 1921, LSA are the difference of the market value of property for sale or rental purposes, immediately before and immediately after the expropriation. The mere consequential injuries to the owner arising from discomfort, disturbance, injury to business, and the like are damnum absque injuria. Texas Pipe Line Company v. Barbe, supra. See also Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354 (1939).
It is my feeling that there is not sufficient evidence in the record to justify an award of severance damages. Based on the decision on second rehearing of Texas Pipeline Company v. Barbe, supra, I do not feel that defendants here have sufficiently proven the severance damages awarded by the trial court. I am agreeable to remanding the case to the lower court to permit the defendant to establish by competent evidence the difference between the market value of each tract for sale or rental immediately before and immediately after the expropriation, and in determining this market value the use to which the right is being put.
However, in the instant case, an application of the Giaccone rule appears to be inequitable since the right-of-way expropriated is to the rear of the property. As previously noted, there appears to be very little severance damages established. Yet, the majority is classifying the subject property into front and rear portions ignoring a fair market value for the property as a whole for industrial use.
I am further in disagreement with the manner in which the majority disposes of the present case. If the majority is to hold that the present matter is governed by the Green, Colonial and Giaccone cases, supra, and divide the property into different areas for market value, it is obvious that the value of the right expropriated in the present suit is only $25.00 per acre, or $74.82. Again, I do not agree that this is a correct determination of the fair market value. However, as such appears to be the opinion, it would seem inconsistent to remand the case since they have, in effect, rendered a decision therein.
Furthermore, the majority opinion has apparently held that the property is not subject to industrial use, despite the testimony, and yet remands the case for a trial de novo in the district court. The defendant should still be allowed on the trial de novo to offer additional testimony to establish the market value of the property for industrial uses.
In conclusion, I am of the opinion that the judgment of the District Court which found that the property was adaptable to and best suited for industrial uses and fixed the value based upon comparable sales in the vicinity should be affirmed. I am of the opinion that the judgment of the District Court fixing the severance damages should be reversed and the case remanded for the purpose of allowing proof on this item, although I have serious doubts as to the wisdom of this remand, although it was done in the Texas Pipe Line Company v. Barbe case, supra.
For the above and foregoing reasons I respectfully dissent.
Rehearing denied.
ELLIS, J. dissents from refusal to grant rehearing.