171 So.2d 790 (1965)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellee,
v.
Gladys Mae Boagni WATERBURY, Defendant and Appellant.
No. 1336.
Court of Appeal of Louisiana. Third Circuit.
February 10, 1965.
*791 Kantrow, Spaht & Kleinpeter, by Carlos G. Spaht, Baton Rouge, for defendant-appellant.
D. Ross Banister, Glenn S. Darsey, Brunswig Sholars, Norman L. Sisson, Chester E. Martin, by Brunswig Sholars, Baton Rouge, for plaintiff-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
CULPEPPER, Judge.
In this expropriation suit the plaintiff took 22.4 acres of defendant's 152.6 acre tract of land just east of the City of Opelousas on U. S. Highway 190. The State deposited $173,381 as the value of the 22.4 acres taken, with no allowance for severance damages. After a trial as to quantum, the district judge fixed the value of the property taken at $191,750, but disallowed defendant's claim for severance damages. The defendant appealed, contending the property taken has a value of $258,600 and that severance damages to the remaining parcels amounts to $55,400. The State has not appealed or answered the appeal.
Generally, the facts are that the 152.6 acre tract of land is approximately triangular in shape, with the base of the triangle fronting a total of 4,400 feet on the south side of U. S. Highway 190. The property is bound on the west by the city limits of Opelousas, on the southwest by Louisiana State Highway 31, and on the southeast by a large piece of unimproved property. The entire 152.6 acre tract was being used as farm land at the time of the taking. But the evidence clearly shows that the frontage on U. S. Highway 190, to a depth of approximately 250 feet, has a market value for commercial purposes of about $120 per front foot, except for 900 feet of frontage on the east end which is blocked from the highway by a railroad overpass. The remainder of the 152.6 acres was best suited for residential subdivisions and has a market value of about $2,000 per acre.
In this suit the State has taken 22.4 acres, running from front to rear through said 152.6 acre tract, for the purpose of constructing a new four-lane highway, with service roads on each side, from Opelousas to Sunset. After the taking a parcel of 28.3 acres will remain on the west side of the new highway, and 101.9 acres on the east side. Both remaining parcels will front on new service roads for their entire depths. The property taken forms a "Y", the top of which fronts 2,455 feet on the south side of U. S. Highway 190. The bottom of the "Y" has a width of 385.50 feet on Louisiana Highway 31. A noteworthy feature is that the ends of the arms of this "Y" shaped property taken are narrow strips of highway frontage varying in depth from 50 feet down to about 4 feet.
As is usual in cases of partial takings, the principal issues are: (1) The market value of the property taken and; (2) severance damages to remaining parcels, not offset by special benefits.
We shall first address ourselves to the value of the 22.4 acres taken. Our jurisprudence is settled that "* * * the compensation to be awarded in expropriation *792 suits is the market value of the property taken, that is, the price which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances." State Through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6. Also, the market value to be used is that which exists at the time of the taking and where the best use of the land is for sale to developers for future subdivisions, consideration must be given to the fact that such a developer would make deductions for utility installation costs, roads, drainage, realtor's commissions, etc. State Through Dept of Highways v. Riley, 143 So.2d 397 (La.App. 3rd Cir.1962).
The expert witnesses on value were Mr. Darrell V. Willett, called by the State, Mr. Kermit Williams, called by the landowner, and Mr. John W. Wilson, a realtor, and Mr. Morgan J. Goudeau, a civil engineer, the latter two appointed by the court. These experts were generally in agreement that the best use of the property fronting on U. S. Highway 190 (with a depth of 150 feet, as used by Mr. Wilson and Goudeau, 250 feet as used by Mr. Williams, and varying depths of 200 feet to 400 feet by Mr. Willett) was highway commercial with a value, after development costs, of $100 to $120 per front foot; and that the best use of the property to the rear of this was for residential subdivisions with a value, before development costs, of $2,000 to $2,500 per acre. However, although the experts are in reasonably close agreement as to the values of the commercial and residential properties, their appraisals of the 22.4 acres taken vary considerably. Mr. Willett's appraisal was $76,500 for the part taken; Mr. Williams's was $258,600; and that by Mr. Wilson and Mr. Goudeau was $399,463.83. As will be demonstrated by our ensuing brief discussion of the testimony of each expert, we think these differences as to market value of the part taken result primarily from differences in the methods of computation used.
The general procedure used by Mr. Willett, in estimating the value of the 22.4 acres taken, was to prepare a proposed subdivision of the entire 152.6 acres, showing residential and commercial lots with streets, utilities, etc. Mr. Willett estimated that over a period of 5 or 6 years the commercial lots could be sold for a total of $425,700 and the residential lots for a total of $812,100 or a grand total of $1,237,800. From this latter figure he deducted certain items for realtor's commission, utilities, streets, interest, developer's profit, etc., which a prospective purchaser of the raw land would consider, and concluded that as of the date of the taking the entire 152.6 acres had a market value of $516,795. He then simply divided $516,795 by 152.6 (the acreage of the entire tract) and found an average per acre value of $3,400 (in round figures). He then multiplied $3,400 times 22.4 (the number of acres taken) and found $76,500 (in round figures) as the value of the property taken.
It is apparent that one reason for Mr. Willett's low evaluation of the property taken, as compared with the other experts, is that he has averaged the very valuable commercial frontage with the less valuable residential property to the rear. He insists that this is the only proper procedure to reach "* * * the value of the part taken as it contributed to the value of the whole property * * * before the taking." Mr. Willett says this is particularly true here where the two narrow strips of frontage taken, varying in depth from 50 feet to about 4 feet could hardly be sold.
In essence, Mr. Willett's contention is the same as that which has been urged by expropriating authorities in many previous cases, but consistently rejected by the courts. The jurisprudence is settled that where the property taken is composed of different classes of land with different values, each class may be considered separately. The rule is succinctly stated in Texas Gas Transmission Corporation v. C. M. Thibodeaux *793 Company, La.App., 148 So.2d 337 (1st Cir. 1962) as follows:
"In the cited authorities the Supreme Court recognized that in a given tract of land there may be found lands possessing different characteristics and classifications so that each and every acre therein does not necessarily possess the same value. The Supreme Court expressly declared that in such circumstances the value of each acre is not the average value of the entire tract as a whole. The rationale of the rule is that under such circumstances the value of the particular class of lands affected must be determined in the light of their relative worth, as compared to the remainder of the tract, proper allowance being made for the difference in values between the various classes of lands in the tract."
This same principle was followed in Green v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619; Colonial Land Co. v. Board of Commissioners of Ponchartrain Levee District, 170 La. 1057, 129 So. 635; Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; State v. Landry, 171 So.2d 779, (La.App., 3rd Cir. 1965).
If we apply the principle established by the above jurisprudence to the testimony of Mr. Willett, we find that the 17.2 acres of residential property taken, at $2,000 per acre, would be worth $34,000; and the 5.2 acres of commercial frontage taken, at $11,280 per acre, would total $58,656, for a total appraisal of $93,056 for the 22.4 acres taken.
Another reason for the low estimate by Mr. Willett is that he has figured approximately 40% for developer's costs and profits, whereas Mr. Williams has figured 20%.
However, even if we were to make the discussed adjustments in Mr. Willett's appraisal, the total would still be far less than the $191,750 awarded by the trial court for the 22.4 acres taken, as to which sum the State makes no complaint on appeal.
Now turning to the testimony of Mr. Kermit Williams, a realtor and appraiser of Baton Rouge, we find his estimate of the value of the property taken summarized in defendant's brief as follows:

"VALUE OF THE PROPERTY TAKEN:
2,450' of Highway Commercial Frontage
@ $120 per front foot $294,000.00
Less 6.9 Acres reduced from Highway
Commercial to residential by being cut-off
from the highway @ $2,000 an acre 13,800.00
 ______________
 $280,200.00"
"Also less a 20% Discount for cost of selling
and delay (present worth of dollar collected
over a period of 4 or 5 years 56,000.00
 ____________
 $224,200.00
Plus 17.2 acres residential property @
$2000 per acre 34,400.00
 ____________
Total value of part taken $258,600.00"

It is apparent that the principal reason for Mr. Williams's appraisal being high is that he has calculated 2,450 feet of commercial frontage taken at $120 per front foot, but has failed to properly take into account that about two-thirds of this frontage is represented by the narrow strips, which are the arms of the "Y", with depths varying from only 4 feet to 50 feet. The figure of $120 per front foot, of course, would apply to property 250 feet deep. Mr. Williams makes adjustment for this obvious discrepancy by deducting $2,000 per acre for the 6.9 acres "* * * reduced from highway commercial to residential by being cut off from the highway * * *." This 6.9 acres is composed of those portions of the 250 foot deep commercial frontage which are to the rear of the narrow strips taken and front on the new service roads. Of course, the result is, according to Mr. Williams's figures, a very large amount is allowed for commercial frontage taken and very little reduction is made for the fact that approximately two-thirds of the frontage taken has a depth of 50 feet or less.
The basic error in this method used by Mr. Williams is that any depreciation in value of said 6.9 acres remaining is a matter *794 which properly addresses itself to severance damages. As is pointed out in other portions of this opinion, severance damages are those caused to remaining property as a result of the taking and any such severance damages may be offset by special benefits to such remaining property, but should not be used in calculating the value of the property taken, as Mr. Williams has done here.
As regards the last two expert witnesses, Mr. Wilson, a local realtor in Opelousas, and Mr. Goudeau, a civil engineer, who prepared a joint estimate appraising the 22.4 acres taken at $339,463, defendant acknowledges in her brief that these experts failed to take into account many development costs. As we understand it, defendant does not vouch for Mr. Wilson's appraisal procedure and submits his testimony only in the corroboration of the values of the commercial and residential properties, about which there is not much dispute. Hence we will not discuss further the testimony of these two experts.
Summarizing, and using a concensus of the experts as to value, but applying the principles established in the above jurisprudence, we think it proper to first establish the per acre value of the commercial frontage. One acre of such frontage with a depth of 250 feet would have a frontage of 175 feet which, at $120 per front foot would give a value of $21,000 per acre for the commercial property. Thus the 5.2 acres of commercial property taken would have a value of $109,200. We need not decide whether any development costs should be deducted from this. Added to $34,400 for 17.2 acres of residential property at $2,000 per acre this would result in a total of $143,600 for the 22.4 acres taken. Of course, this figure also is less than the amount awarded by the trial court for the property taken and as to which the State makes no objection.
We now turn to the issue of severance damages. There is no dispute as to the law. Essentially, severance damage is any depreciation in market value of the remaining area caused by the taking. Texas Pipeline Co. v. Barbe, 229 La. 191, 85 So.2d 260. Our jurisprudence is established that any severance damages to the remainder may be offset by any special benefits to the remainder, i.e., any increment in market value, caused by the new improvements for which the property was taken. Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885. It is likewise now established in our jurisprudence that although special benefits to the remainder may offset severance damages, they may not offset the sum paid for the property taken. State Through Dept. of Highways v. Circle Center Corporation, 148 So.2d 411 (La.App., 1st Cir. 1964); State Through Dept. of Highways v. Landry 171 So.2d 779 (La.App., 3rd Cir. 1965).
Mr. Williams testified that the new highway through defendant's property will leave an odd shaped 28.3 acre tract on the west and a 101.9 acre tract on the east; and that this division of the property will increase the cost of subdividing, developing and selling, thereby causing severance damages of $55,400. It is Mr. Williams's opinion that the property fronting on the new service roads has a best use for residential only and is not useful as highway commercial. He therefore found no special benefits to the remaining property.
On the other hand, Mr. Willett was of the opinion that these two remaining tracts of land would receive special benefits of at least $123,000. He based this opinion essentially on the heavy volume of traffic over the new highway from Opelousas to Sunset and the fact that the remaining property will now be located at the junction of two major traffic arteries. Mr. Willett is of the opinion that all of the remaining property fronting on the service roads is now useful for highway commercial purposes, such as motels, shopping centers, etc.
The trial judge concluded that any severance damages would be more than offset by special benefits. We think he was clearly correct. The only serious argument made by defendant in opposition to this conclusion is that traffic will have limited *795 access to the service roads. A careful study of the plats filed in evidence has convinced us that access to these service roads is not a serious problem to commercial development thereon. Both of these service roads are readily accessible from the main four-lane highways for traffic approaching in any direction.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.