HOOD, Judge.
This is a companion suit to State, Through Department of Highways v. Le- *612 Doux, 184 So.2d 604, which is being decided by us on this date. These suits were consolidated for trial and appeal, and the issues presented in each .case are almost identical.
In the instant suit, the State expropriated for highway purposes a portion of a tract of land owned by the defendants, Mr. and Mrs. Jesse Bertrand. It deposited the sum of $2640.00 with the cleric as just compensation for the property taken. Defendants answered, claiming that the amount deposited was inadequate.
After trial, the district judge concluded that the property taken had a market value of $5630.00, and an appropriate judgment was rendered based on that finding. Plaintiff appealed, and defendants have answered the appeal, praying primarily that the judgment of the trial court be affirmed, and demanding alternatively, in the event it is determined that the land is not best suited for commercial uses, that an additional award be made for loss or destruction of improvements on the property taken.
This suit was filed and the order of expropriation was signed on January 23, 1964. Prior to the taking, the defendants’ property consisted of a ten-acre tract of land located immediately south of and adjacent to U. S. Highway 190, about two and one-half miles west of the City of Opelousas, and about the same distance east of Law-tell, in St. Landry Parish. This ten-acre tract had a frontage of 566.7 feet on U. S. Highway 190 by a depth of about 800 feet. It is bounded on the east by the property of Emmett LaDoux, the defendant in the companion suit, on the south by a public gravel road, and on the west by a tract of land which is being used for residential purposes.
At the time of the taking, the property was being used by defendants as a rural or suburban homeplace, and it was still being used for that purpose at the time of the trial. The Bertrand home is a substantial, one-story brick residence building with an attached double garage and with a hard surfaced driveway leading from the highway to the homeplace. Behind this residence are several outbuildings, including a recreational building, and there are a number of chain link and board fences on the premises. The residence building was located approximately 350 feet south of Highway 190, as that highway existed prior fo the taking. On both sides of the residence and to the rear of it are pastures which the defendants used for grazing some stock which they owned. The property was well landscaped and maintained, and one of the witnesses described it as “the prettiest house along that strip between Opelousas and Lawtell.”
The property taken by the State consisted of a strip of land 566.7 feet long and about 87 feet wide, running along the entire north line of defendants’ property and fronting on U. S. Highway 190. It comprised a total of 1.028 acres. As pointed out in the LeDoux case, the purpose of the taking was to enable the Highway Department to increase the width of U. S. Highway 190 and to convert it from a two-lane to a four-lane, hard surfaced highway. The adjacent property owners are to have unlimited access to the improved highway, just as they have had to U. S. Highway 190 heretofore.
The expert appraisers who testified in the LeDoux case were also witnesses in the instant suit. All of these experts used the market data approach in determining the value of the property taken, and all relied on the same comparable sales which were cited and relied on in the LeDoux case.
Dan A. Ritchey, Jr., and John M. Wilson, the real estate appraisers who testified in behalf of the defendants, felt that the north 300 feet of defendants’ property was best suited for use for commercial purposes, and that the rear portions of the property were best suited for suburban residential uses. Ritchey valued the property taken at 17j4 cents per square foot, making a total value of $7836.30. Wilson valued it at 21 cents per square foot, concluding that the property taken had a total value of $9403.- *613 59. Neither of these appraisers made any allowance for the improvements which were on the property taken and which would have to be destroyed, these improvements consisting principally of fences, driveways, four lighted pillars at the entrance of the driveway, and shrubs.
Maurice Chappuis and Stanley A. Tiger, appraisers who testified in behalf of plaintiff, felt that the highest and best use of the subject property was for rural suburban estate purposes. Each valued the parent tract at $1500.00 per acre, fixing the value of the land taken at $1542.00. Chap-puis concluded that the defendants also would sustain a loss of $1245.00 because of improvements which would be destroyed by the taking, and thus it was his opinion that the total value of the property and improvements taken was $2785.00. Tiger valued the improvements at $1327.40, estimating the total value of the property expropriated to be $2870.00.
As in the LeDoux case, the trial judge held that the “most profitable likely use” of the subject property was “commercial in nature.” After considering “the approximate time that could reasonably be expected for the disposition of this frontage of some 300 feet in depth,” he concluded that the property had a value of $5630.00, which is about the average of the values which were placed on the property by all of the expert appraisers.
All of the issues which have been presented in the instant suit were presented, considered and determined in the LeDoux case. No useful purpose would be served by again discussing those issues. For the reasons which we assigned in the LeDoux case, therefore, we conclude that the highest and best use of the north 300 feet of defendants’ property was for development for future use as commercial sites.
In this action, as in the LeDoux case, plaintiff argues that a hypothetical commercial strip of a depth of 300 feet would require penetration into the highly improved ’ remainder, and' that the higher market value which the frontage would have if converted to commercial use would he more than offset by the reduction in value of the improvements on the remainder.
The facts in the instant suit are that defendants’ home was located 350 feet south of the original highway, so the hypothetical 300-foot depth to which the appraisers referred would not extend to any of the buildings. Ritchey, one of defendants’ appraisers, concedes that there will be some reduction in the value of the homeplace if the frontage “directly in front of the house” is converted to commercial use, but he and Wilson both feel that the rear of the house can easily be converted to a front entrance, facing on the gravel road on the south, with no great loss in value. Both testified that solely from the standpoint of market value, it would be advantageous to defendants to convert the frontage to commercial use. The appraisers called by plaintiff, on the other hand, felt that the reduction in value of the residence building, which would be occasioned by converting the front to commercial use, would offset any gain which might be derived from such a conversion.
We gather from the testimony of these experts that the residence building will sustain a reduction in value only if the center of the ten-acre tract, directly in front of the house, is converted to commercial use. There, of course, are two pastures of about equal size located on each side of the residence, both of which pastures have frontage on the highway. We assume that there will be no appreciable reduction in value to the house if the pasture frontage is converted to commercial use.
After considering all of the facts, we conclude, as the trial judge apparently did, that the increase in market value which would result from converting the frontage property to commercial use would not be offset completely by the reduction in value *614 of the residence building, and that purely from the standpoint of market value it would he advantageous to defendants to convert the frontage to commercial use as soon as there is a demand for it for that purpose.
For the reasons which we assigned in the LeDoux case, we have concluded that the evidence supports the award of $5630.00 made by the trial court in this case, and that the judgment appealed from should be affirmed.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintif f-app ellant.
Affirmed.